UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AMY LYNN POWERS,
　　　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

AMERICAN EXPRESS FINANCIAL
ADVISORS, INCORPORATED,
　　　　*Defendant & Third-Party*
　　　　　*Plaintiff-Appellant,*

　　　　　　v.

MICHAEL D. D'AMBROSIA,
　　　　　*Third-Party Defendant.*

No. 00-1390

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-385-S)

Argued: October 30, 2000

Decided: December 6, 2000

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Gilbert William Boyce, KUTAK ROCK, L.L.P., Washington, D.C., for Appellant. Clifford Roy Bridgford, Frederick, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Amy Powers and Michael D'Ambrosia, who lived together, had a joint investment account with American Express Financial Advisors (American Express). On the instructions of D'Ambrosia alone, American Express transferred all of the funds ($86,836.79) in the investment account to a bank account in the couple's joint name. After D'Ambrosia took all of the money, Powers sued American Express, claiming that its transfer to the bank account was ineffective because the signature of both owners of the investment account was required for a transfer of more than $50,000. The district court granted summary judgment to Powers and awarded her damages of $86,836.79, together with prejudgment interest. We affirm.

I.

Powers and D'Ambrosia began living together in 1983. On July 28, 1994, the couple opened an investment account, as joint tenants with right of survivorship, with American Express. The account was initially funded with a $15,000 transfer from the couple's joint bank account. Additions to the account were to come from D'Ambrosia's earnings. D'Ambrosia agreed to the joint account because Powers provided him with "domestic needs" and because she had contributed to improvements made to the couple's residence. To open the American Express account, Powers and D'Ambrosia filled out an investment application. In Section C of the application, Powers and D'Ambrosia checked the box next to the "Joint Tenant" provision, which reads:

> First and second clients have right of Survivorship. This is not the same as tenants-in-common. The first client's home or mailing address will be used for account-related purposes. You understand that only one signature is required for redemption requests up to $50,000.

The couple's application also directed American Express to place their money in four separate mutual funds.

On August 4, 1997, Powers and D'Ambrosia parted ways. By that time their American Express account was valued at over $80,000. Both of them contacted American Express and asked it to freeze the account. Later, in a letter dated September 26, 1997, D'Ambrosia and Powers authorized a release of the freeze and directed American Express to transfer the funds to a Prudential Securities account. There is a dispute about whether Powers actually signed the September 26 letter. Powers asserts that her signature was forged, but American Express contends that there is a genuine issue of fact about whether that is the case. The forgery issue is not material, however. *See* footnote *, *infra*.

On October 15 and 16, 1997, D'Ambrosia sent American Express two separate faxes. The first, on October 15, contained a memo signed by D'Ambrosia, a copy of D'Ambrosia and Powers's statement of account at American Express, and a copy of the September 26 letter. D'Ambrosia's memo, included in the fax, changed the instructions in the September 26 letter. The memo directed American Express to close the couple's account and to mail the proceeds to D'Ambrosia and Powers's former residence in Columbia, MD. The second fax, dated October 16, also contained a memo from D'Ambrosia, a statement of the couple's account at American Express, and a copy of the September 26 letter. The memo attached to this fax again changed the instructions in the September 26 letter. The memo, signed only by D'Ambrosia, directed American Express to transfer the funds to a joint bank account held by Powers and D'Ambrosia at FCNB Bank. After receiving both faxes, American Express ignored the September 26 letter and followed the instruction in D'Ambrosia's October 16 fax memo. The company wired $86,836.79 to Powers and D'Ambrosia's FCNB joint account, and within a few days, D'Ambrosia absconded with the money.

When Powers discovered what had happened, she filed this action against American Express to recover the money. Both parties moved for summary judgment. Powers claimed that American Express transferred the funds in contravention of section 8-507(b) of Maryland's Commercial Code. *See* Md. Com. Law (U.C.C.) § 8-507(b). Under

U.C.C. § 8-507(b), a "securities intermediary," like American Express, which transfers funds pursuant to an "ineffective entitlement order," is liable to an "entitlement holder" for any damages caused by the improper transfer. Powers contended that the faxes were ineffective entitlement orders because Section C of the investment application required both signatures for redemption requests over $50,000. Thus, as an entitlement holder, Powers claimed that American Express was liable to her for acting on D'Ambrosia's fax requests of October 15 and 16, 1997, which she did not sign. American Express claimed that Powers's authorization was not necessary. It claimed that D'Ambrosia's faxes constituted an effective entitlement order because, under U.C.C. § 8-107(b)(1), D'Ambrosia was an "appropriate person" to order the transfer of the couple's funds.

The district court agreed with Powers that the faxes received by American Express constituted an "ineffective entitlement order." *Powers v. American Express Fin. Advisors, Inc.*, 82 F. Supp. 2d 448, 452 (D. Md. 2000). The court recognized that Powers and D'Ambrosia were "entitlement holders" because as co-owners of the American Express account, "they were identified in the records of the securities intermediary (American Express) as having a security entitlement against the intermediary." *Id.* at 451. Because D'Ambrosia was an entitlement holder, the court acknowledged American Express's contention that D'Ambrosia was an "appropriate person" to give an entitlement order to American Express under U.C.C. § 8-107. *Id.* at 451-52. The court also noted that when an "appropriate person" issues an entitlement order to a securities intermediary, the intermediary has a duty to execute the order under U.C.C. § 8-507(a)(2). *Id.* at 452. The court decided, however, that section 8-507(a)(2) cannot be read in a vacuum because Section C of the couple's investment application with American Express requires the signatures of both investors for any redemption request above $50,000. The district court held that Section C's joint signature requirement was valid under U.C.C. § 1-103. *See id.* at 453. Section 1-103 states that "the principles of law and equity . . . shall supplement [the U.C.C.]." Thus, "when an intermediary has agreed that the 'appropriate person' to make an order is both owners of a joint account, both owners must make the order." *Id.* Because Powers did not authorize or otherwise ratify the transfer of the $86,836.79 to an the account at FCNB, the district court concluded that the transfer was ineffective. *See id.* at 452.

The district court also rejected American Express's assertion that the $50,000 threshold only applied to transfers from a single mutual fund account. *See id.* at 454. Because Powers and D'Ambrosia did not have more than $50,000 in any one of their four mutual funds, American Express asserted that two signatures were not required for the $86,836.79 redemption. The district court held, however, that American Express's interpretation was contrary to the plain language of Section C which states that "only one signature is required for redemption requests up to $50,000." Because the language of Section C refers to redemption requests generally and not to redemption requests out of individual funds, the district court concluded that two signatures were required for any transfer greater than $50,000. *See id.*

The district court summarily rejected American Express's remaining contentions. American Express claimed that Powers was barred from seeking damages under U.C.C. § 8-115. According to U.C.C. § 8-115, a securities intermediary is not liable to an individual who has an adverse claim to an asset that a securities intermediary transfers at the direction of a customer. The district court held that Powers was not an adverse claimant for the simple reason that she was one of two entitlement holders with respect to the account. *See id.* at 453.

Finally, the district court rejected American Express's request that the court impress the funds in the FCNB account with a constructive trust on behalf of D'Ambrosia's former employer, Signal Perfection Limited. *See id.* D'Ambrosia had been an accountant at Signal Perfection. Around December 1997 or January 1998, Signal Perfection discovered that D'Ambrosia had been embezzling money from the company for some time. In late January of 1998 D'Ambrosia and Signal Perfection signed a settlement agreement disposing of all claims the company had against D'Ambrosia. In exchange for the release D'Ambrosia assigned to Signal Perfection his interest in certain accounts, including the FCNB joint account. American Express argued that the district court should impose a constructive trust on the FCNB account because D'Ambrosia allegedly had deposited the converted American Express funds in that account. The district court denied American Express's request, holding that American Express did not have standing to seek a constructive trust on behalf of Signal Perfection and that, in any event, American Express had failed to demonstrate that it could trace the converted funds. *See id.*

Based on this reasoning, the district court granted Powers's motion for summary judgment and concluded that she was entitled to damages caused by American Express's improper transfer of the funds from the joint investment account. *See id.* at 454. The district court subsequently entered judgment against American Express in the amount of $86,836.79, together with prejudgment interest. *See id.* at 457-58. American Express appeals.

## II.

After considering the joint appendix, the briefs, and the oral arguments of counsel, we are persuaded that the district court reached the correct result. We therefore affirm substantially on the reasoning of the district court. *See Powers v. American Express Fin. Advisors, Inc.*, 82 F. Supp. 2d 448 (D. Md. 2000).*

*AFFIRMED*

---

*American Express contends that a genuine issue of material fact exists as to whether Powers's signature on the September 26 letter was forged. We disagree. Although the district court devoted some attention to the September 26 letter, its decision did not depend on the validity or invalidity of Powers's signature on that letter. Rather, the court's decision turns on the fact that Powers never authorized a transfer of funds to the FCNB account. The September 26 letter directed American Express to send the funds to a Prudential Securities account. The only entitlement order requesting a transfer to the FCNB account was the October 16 fax memorandum that Powers never signed. Thus, the district court's ultimate conclusion that Powers never authorized or ratified the transfer to the FCNB account is based on facts that are not contradicted.